## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

In re:   **Chad M. Davidson,**

**NOTICE OF MOTION OF
BANK FOR RELIEF FROM
THE AUTOMATIC STAY AND
ABANDONMENT**

Debtor.          Case No. 15-33834-gmh

**FIRST BANK FINANCIAL CENTRE,**
          Creditor,

vs.

**CHAD M. DAVIDSON,**
          Debtor,

and

**MARY B. GROSSMAN,**
          Trustee.

First Bank Financial Centre, the current mortgagee of record, its successors, servicing agents and/or assigns (hereinafter collectively and at all times material hereto "First Bank") has filed papers with the court to obtain relief from automatic stay and abandonment.

**YOUR RIGHTS MAY BE AFFECTED.**

**YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY (IF YOU HAVE ONE IN THIS BANKRUPTCY CASE). IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

If you do not want the court to grant the relief sought in the Motion, or if you want the court to consider your views on the Motion, **within fourteen (14) days of the date of this Notice,** you or your attorney must do the following:

File with the court a written objection to the Motion and request for a hearing with:

Office of the Clerk of Court
517 E. Wisconsin Avenue
Milwaukee, WI 530202

If you mail your request and objection to the court for filing, you must mail it early enough

so the court receives it within fourteen (14) days of the date of this Notice.

You must also mail a copy of the written objection and request for a hearing to:

Atty. James R. Danaher
Schloemer Law Firm, S.C.
143 S. Main Street, Third Floor
West Bend, WI 53095

Mary B. Grossman, Bankruptcy Trustee
P.O. Box 510920
Milwaukee, WI 53203

Atty. Edward W. Harness
Harness Law Offices
P.O. 1276
Milwaukee, WI 53201

If you or your attorney do not take these steps, the court may decide that you do not oppose

the relief sought in the Motion and may enter an order granting that relief.

Dated this ⟋6 day of April, 2016.

SCHLOEMER LAW FIRM, S.C.
Attorneys for First Bank Financial Centre

By: _____
     James R. Danaher
     State Bar No. 1033966

Drafted By:

Atty. James R. Danaher
143 S. Main Street, Third Floor
West Bend, WI 53095
(262) 334-3471

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

In re: **CHAD M. DAVIDSON,**

**MOTION OF FIRST BANK FINANCIAL CENTRE FOR RELIEF FROM THE AUTOMATIC STAY AND ABANDONMENT**

Debtor.                    Case No. 15-33834-gmh

**FIRST BANK FINANCIAL CENTRE,**

Creditor,

-vs-

**CHAD M. DAVIDSON,**

Debtor,

and

**MARY B. GROSSMAN,**

Trustee.

First Bank Financial Centre, the current mortgagee of record, its successors, servicing agents and/or assigns (hereinafter collectively and at all times material hereto the "Bank") through its attorneys, Schloemer Law Firm, S.C., hereby moves the court for relief from the automatic stay and abandonment pursuant to §362(d) and §554(b) of the Bankruptcy Code and alleges as follows:

    1.    The Bank holds a Note and Mortgage encumbering real property owned by the debtors and located at 3921 W. County Line Road, #8, Brown Deer, WI. A copy of the Note and properly perfected Mortgage are attached hereto as Exhibits A and B and their contents are incorporated herein by reference.

    2.    The Bank holds a Home Equity Credit Agreement and Mortgage encumbering real property owned by the debtors and located at 3921 W. County Line Road, #8, Brown Deer, WI.

1

A copy of the Home Equity Credit Agreement and properly perfected Mortgage are attached hereto as Exhibits C and D and their contents are incorporated herein by reference.

3.     That the Mortgages loan for which the Bank has a secured interest is in default for all payments coming due on and after April 2015 and, unless cured, said default will result in the subject property being sold at a foreclosure sale.

4.     That the estimated fair market value of the property according to the Local Assessor's office is $55,900.00, as set forth on attached Exhibit E.

5.     That the mortgaged property's value is computed as follows:

| | | | |
|---|---|---|---|
| A. | Estimated Fair Market Value | $ | 55,900.00 |
| B. | Less:  Forced Sale Discount (20%) | $ | 11,180.00 |
| C. | Value at Foreclosure Sale | $ | 44,720.00 |

6.     That the amounts due and to become due on the Note, Home Equity Credit Agreement and Mortgages as of January 19, 2016 are as follows:

| | | | |
|---|---|---|---|
| A. | Note and Mortgage -- Principal & Interest | $ | 61,392.43 |
| B. | Home Equity Credit Agreement and Mortgage – Principal & Interest | $ | 13,266.84 |
| C. | Estimated Attorney Fees and Costs | $ | 2,500.00 |
| D. | Amount Due at Foreclosure Sale | $ | 77,159.27 |

7.     That there is no equity in the property over and above the liens of the secured creditors, the exemptions claimed by the debtor, unpaid real estate taxes and other liens of record. The Bank does not have protection from the debtor in the form of money payments or other security pending in this bankruptcy case and the debtor has not made any post-petition mortgage payments and owes post-petition payments for January, February, March, and April 2016.  Based

2

upon the foregoing, the Bank does not have adequate protection from the debtor with respect to its security interest.

8.     The allegations of the foregoing paragraphs indicate that the encumbered property is burdensome and of inconsequential value and benefit to the bankruptcy estate.

9.     That the Affidavit of Brian Arndt, attached hereto and incorporated herein, serves as support for this Motion.

**WHEREFORE,** Bank requests that the automatic stay as it pertains to the debtors and the encumbered real property be terminated pursuant §362(d) of the Bankruptcy Code so that the Bank may protect, exercise, and enforce its rights pursuant to said Note and Mortgage, and that the Trustee be ordered to abandon the estate's interest in the encumbered property pursuant to '554(b) of the Bankruptcy Code, that any order entered pursuant to this Motion be effective immediately upon its entry and for such other further relief as may be just and equitable.

Dated this ____ day of April, 2016.

SCHLOEMER LAW FIRM, S.C.
Attorneys for First Bank Financial Centre

By: _____
James R. Danaher
State Bar No. 1031966

Drafted By:

Atty. James R. Danaher
143 S. Main Street, Third Floor
West Bend, WI 53095
(262) 334-3471

3

# NOTE

March 15th, 2011      WEST BEND      ,   WISCONSIN

*[Date]*      *[City]*      *[State]*

3921 County Line Road  #8 West  Brown Deer, WI 53209

*[Property Address]*

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 61,500.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **FIRST BANK FINANCIAL CENTRE, A WISCONSIN CORPORATION**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  4.875  %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

Solely for the purpose of computing interest, a monthly payment received by the Note Holder within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

**3.  PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st    day of each month beginning on  May 1st 2011    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on  April 1st, 2041     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  155 W. WISCONSIN AVE., OCONOMOWOC, WI 53066     or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $  325.46

**4.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  15  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000  % of my overdue payment of principal and interest, I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

WISCONSIN FIXED RATE NOTE -- Single Family -- Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT  Form 3290 1/01
G3250-01  (0008)      *(Page 1 of 2)*      Initials

Case 15-33834-gmh    Doc 13    Filed 04/06/16    Page 6 of 48

kwiktag*   084 661 443

**EXHIBIT**

A

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
CHAD M DAVIDSON                                          -Borrower

Pay to the order of:

_____ (Seal)
                                                        -Borrower

Without Recourse
**FIRST BANK FINANCIAL CENTRE**

_____ (Seal)
MICHAEL A. WELSH                                        -Borrower

ASST VICE PRESIDENT

_____ (Seal)
                                                        -Borrower

*[Sign Original Only]*



DOC.# 09982203

RECORDED 03/24/2011 11:17AM
JOHN LA FAVE
REGISTER OF DEEDS
Milwaukee County, WI
AMOUNT: 30.00
FEE EXEMPT #:

Record and Return To:
FIRST BANK FINANCIAL CENTRE
155 W. WISCONSIN AVE.
OCONOMOWOC, WI 53066

──────────── [Space Above This Line For Recording Data] ────────────

# MORTGAGE

PARCEL TAX ID#: 011-0233
PMI CASE#:

*kwiktag*     064 681 445

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)      "Security Instrument" means this document, which is dated   March
15th   ,  2011      together with all Riders to this document.
(B)      "Borrower" is  CHAD M DAVIDSON , A SINGLE PERSON

Borrower is the mortgagor under this Security Instrument.
(C)      "Lender" is  FIRST BANK FINANCIAL CENTRE

Lender is a  A WISCONSIN CORPORATION                              organized and existing under the
laws of  THE STATE OF WISCONSIN                                  . Lender's address is
155 W. WISCONSIN AVE., OCONOMOWOC, WI 53066

Lender is the mortgagee under this Security Instrument.

WISCONSIN -- Single Family -- Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3050 1/01
G3050-01 (0902)                          (Page 1 of 19)                          Initials: _____

EXHIBIT

B

(D)    "Note" means the promissory note signed by Borrower and dated March 15th 2011    . The Note states that Borrower owes Lender

SIXTY ONE THOUSAND FIVE HUNDRED AND NO/100

Dollars (U.S. $ 61,500.00                ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than April 1st, 2041

(E)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G)    "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider | ☐ 1-4 Family Rider |
| ☐ Other(s) [specify] | ☐ Planned Unit Development Rider | |

(H)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K)    "Escrow Items" means those items that are described in Section 3.

(L)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N)      "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O)      "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P)      "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in the  **COUNTY**

*[Type of Recording Jurisdiction]*

of **MILWAUKEE**

*[Name of Recording Jurisdiction]*

**SEE ATTACHMENT**

which currently has the address of  **3921 County Line Road   #8 West**

*[Street]*

**Brown Deer**                                    , Wisconsin          **53209**                    **("Property Address"):**
           *[City]*                                                                      *[Zip Code]*

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

WISCONSIN —Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3050 1/01
G3050-04 (0009)                    *(Page 4 of 19)*                    Initials: _Amu_

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts

(including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters,

Case 15-33834-gmh    Doc 13    Filed 04/06/16    Page 14 of 48

or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in

connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying Reasonable Attorneys' Fees (as defined in Section 25) to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the

WISCONSIN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3050 1/01
G3050-09 (0009)                    *(Page 9 of 19)*          Initials: _____

amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payment using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has -if any- with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

Case 15-33834-gmh    Doc 13    Filed 04/06/16    Page 17 of 48

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

WISCONSIN --Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3050 1/01
G3050-11 (0009)                          (Page 11 of 19)                          Initials: _____

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**WISCONSIN** -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3050  1/01
G3050-12  (0009)                                    *(Page 12 of 19)*                      Initials: _____

Case 15-33834-gmh    Doc 13    Filed 04/06/16    Page 19 of 48

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All Notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a

WISCONSIN -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3050 1/01
G3050-13  (0009)                        (Page 13 of 19)                        Initials:

Case 15-33834-gmh     Doc 13     Filed 04/06/16     Page 20 of 48

prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25), property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d)

Case 15-33834-gmh    Doc 13    Filed 04/06/16    Page 21 of 48

Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that

WISCONSIN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3050 1/01
G3050-15 (0009)                    *(Page 15 of 19)*                    Initials: _____

adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25) and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

WISCONSIN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3050 1/01
G3050-16 (10/04)                         *(Page 16 of 19)*                         Initials: _____

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Accelerated Redemption Periods.** If the property is a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.101 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the property is other than a one-to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church, or a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.103 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

25. **Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

[ THIS SPACE LEFT INTENTIONALLY BLANK ]

WISCONSIN --Single Family-- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3050  1/01
G3050-17  (0009)                    *(Page 17 of 19)*                    Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
CHAD M DAVIDSON                                    -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

Witnesses:

_____     _____

_____

This instrument was prepared by:   **CINDY CONWAY**
**FIRST BANK FINANCIAL CENTRE**
**155 W. WISCONSIN AVE.**
**OCONOMOWOC, WI 53066**

WISCONSIN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3050   1/01
G3050-18   (0009)                          *(Page 18 of 19)*

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF WISCONSIN,

COUNTY OF Milwaukee                    } SS

The foregoing instrument was acknowledged before me this
15th Day of March, 2011

(date)

by CHAD M DAVIDSON., A SINGLE PERSON

(person acknowledging)

_Brenda L Simon_

Notary Public, State of Wisconsin

My Commission Expires: 8/28/11

WISCONSIN -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3050 1/01
G3050-19 (0009)                    (Page 19 of 19)

Initials: _____

ATTACHMENT TO WISCONSIN CONVENTIONAL MORTGAGE

Subject Property Legal Description

Unit 8, together with an undivided 1/16th interest in the Common
Elements and Limited Common Elements and the exclusive use of the
Limited Common Elements appurtenant to said Unit, in River Side
Condominium, a condominium declared and existing under and by virtue
of the Wisconsin Conominium Ownership Act of the State of Wisconsin
and recorded by a Declaration of such condominium in the Office of the
REgister of Deeds for Milwaukee County, Wisconsin on April 30, 1979,
on Reel 1198, Image 1929, as Document No. 5307114, as amended by
Agreement for Removal recorded November 13, 1990, on Reel 2511, Image
614, as Document No. 6435415, said condominium being located in the
Village of Brown Deer, County of Milwaukee, State of Wisconsin, on the
real estate described in said Declaration and incorporated herein by
this reference thereto. The Post Office address of said Unit is 3921
County Line Road #8, Brown Deer, Wisconsin, 53209.

THIS IS A PURCHASE MONEY MORTGAGE.

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **15th** day of **March**, **2011**, and is incorporated into and shall be to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

**FIRST BANK FINANCIAL CENTRE, A WISCONSIN CORPORATION**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**3921 County Line Road #8 West Brown Deer, WI 53209**

*[Property Address]*

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as

**River Side Condominium**

*[Name of Condominium Project]*

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards

Case 15-33834-gmh    Doc 13    Filed 04/06/16    Page 28 of 48

included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

Case 15-33834-gmh    Doc 13    Filed 04/06/16    Page 29 of 48

F. **Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement as the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
CHAD M DAVIDSON                                        -Borrower

_____ (Seal)
                                                                     -Borrower

_____ (Seal)
                                                                     -Borrower

_____ (Seal)
                                                                     -Borrower

MULTISTATE CONDOMINIUM RIDER – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3140 1/01
G3140-03   (0008)                                 *(Page 3 of 3)*

# HOME EQUITY CREDIT AGREEMENT
(Use Only If Collateral Includes
Borrower's Dwelling)

Boxes Checked Are Applicable.
Boxes Not Checked
Are Inapplicable.

I and **First Bank Financial Centre, 155 W. Wisconsin Ave., Oconomowoc, WI 53066** ("Lender") agree as follows:
(Name and Address)

**1. Loans.** I request that the Lender lend to me from time to time such amounts as I may request in accordance with this Agreement (the "Loans"), and subject to the terms of this Agreement, the Lender agrees to lend such amounts up to the aggregate principal amount of $ **12,300.00** at any time outstanding ☐ less accrued finance charges (the "Credit Limit"). Unless this Agreement is sooner terminated pursuant to paragraphs 12 or 13, I may obtain Loans under this Agreement until **March 15, 2021** (the "Termination Date"). ☐ If checked here, the Termination Date shall be automatically extended from year to year after this date unless the Lender gives me notice to the contrary at least 30 days prior to the date specified in this paragraph or the annual anniversary of such date. The Lender is not obligated to make Loans in excess of the Credit Limit. Notwithstanding the Credit Limit, I am liable for and agree to pay to the Lender all Loans and other charges made under this Agreement.

**2. Finance Charge.** The Lender will post all Loans and other charges made under this Agreement to an account maintained in my name (the "Account"). All charges to the Account will be considered Loans for purposes of the Agreement. All Loans and other charges made under this Agreement are subject to Finance Charges from the date posted to the Account by the Lender until paid. Unpaid Finance Charges posted to the Account ☐ will be ☒ will not be subject to Finance Charges from the date posted until paid. I agree to pay the Finance Charges, calculated as follows:

(a) ☒ The Lender figures ☐ a portion of the FINANCE CHARGES ☒ the FINANCE CHARGES by applying each day the daily periodic rate described in paragraph 4 (a) or (b) to the "daily balance" in the Account (including current transactions). To get the "daily balance" the Lender takes the beginning balance of the Account each day, adds any new Loans or charges, and subtracts any payments and credits. This gives the "daily balance." The total of Finance Charges for the billing period is the total of these daily Finance Charges.

(b) ☐ The Lender figures ☐ a portion of the FINANCE CHARGES ☐ the FINANCE CHARGES by applying the monthly periodic rate described in paragraph 4 (a) or (b) to the average daily balance in the Account (including current transactions). To get the "average daily balance," the Lender takes the beginning balance of the Account each day, adds any new Loans or charges, and subtracts any payments or credits. This gives the average daily balance. Then, the Lender adds up all of the daily balances for the billing period and divides the total by the number of days in the billing period. This gives the Lender the "average daily balance."

(c) ☐ The Finance Charge also includes the following additional charges:

**3. Other Charges.** If any payment is not paid in full on or before the **16th** day after its due date, I agree to pay a late charge of **5.00** % of the unpaid amount. I also agree to pay a charge of $ **15.00** for each check presented for payment to the Lender which is returned unsatisfied, and the following additional charges. If these charges or any Finance Charges are not required by the Lender to be paid in cash, they may be charged to the Account by the Lender:

| | | | |
|---|---|---|---|
| Membership Fee for Access to this Credit Plan | $ **50.00** | Appraisal | $ **n/a** |
| Recording Fees | $ **30.00** | Title Examination or Insurance | $ **n/a** |
| Flood Determination Fees | $ **n/a** | **n/a** | $ **n/a** |
| **n/a** | $ **n/a** | **n/a** | $ **n/a** |

The Membership Fee is payable annually at such times as the Lender may require. As a condition to any subsequent extension of this Agreement under paragraph 1, the Lender may require that the property described in paragraph 7 be reappraised or its flood zone status re-determined and if required by Lender I agree to pay the costs of each such reappraisal and flood re-determination in an amount estimated to be the same as the appraisal and flood determination charge disclosed above. If property and/or liability insurance is required under any security agreement or mortgage, I may choose the person through whom such insurance is obtained.

**4. Annual Percentage Rate.** The Annual Percentage Rate includes only interest and not other costs.

(a) ☐ FINANCE CHARGES are computed by applying a ☐ daily periodic rate of **n/a** % to the "daily balance" ☐ monthly periodic rate of **n/a** % to the "average daily balance" (corresponding ANNUAL PERCENTAGE RATE of **n/a** %).

(b) ☒ The periodic rate and the corresponding Annual Percentage Rate may increase and decrease during the term of this Agreement. The periodic rate and the corresponding Annual Percentage Rate shall be adjusted **30 days following every index rate change thereafter** (the "Rate Change Date"). The Annual Percentage Rate on each subsequent Rate Change Date shall equal **the highest U.S. prime published in the Wall Street Journal "Money Rates" table** on the change date

(the "Index Rate") ☒ plus ☐ minus **2.500** percentage points. The current value of the Index Rate is **3.250** %. The current ☒ daily ☐ monthly periodic rate is **.0158** % (corresponding ANNUAL PERCENTAGE RATE **5.750** %). If box 2(a) is checked, the ANNUAL PERCENTAGE RATE. If box 2(b) is checked, the monthly periodic rate is 1/12th of the Annual Percentage Rate. Beginning on the date an adjustment in the rate is effective and until the next Rate Change Date, the periodic rate then in effect will be applied to the balance of the Account to determine the Finance Charges. An adjustment in the periodic rate and corresponding Annual Percentage Rate will apply both to outstanding balances of the Account and to new Loans and other charges. An increase in the Index Rate may increase the amount of each payment or the final payment. If the Index Rate ceases to be made available to the Lender, the Lender may substitute a substantially similar index and margin. The Annual Percentage Rate shall not exceed the lesser of any applicable maximum rate permitted by law or **18.000** % nor be less than **5.800** %.

**5. Loan Procedures.** I may obtain Loans under this Agreement as provided below:

(a) ☒ By using drafts, checks or other means approved by the Lender for the purpose of obtaining Loans under this Agreement. I agree that each Loan request will be for $ **500.00** or more. Regardless of the date or amount of the Loan request, I authorize the Lender to pay and thereby create a Loan to me in the amount of each Loan request which is presented to the Lender and, if required in writing, is signed by either of us or any other person authorized by either of us. I further authorize the Lender, when I order the Lender to stop payment on any Loan request by check or draft, to create a Loan to me in the amount of the Lender's customary stop payment charge. The Lender may, but is not required to, reject or dishonor any Loan request which is less than the required minimum amount or which causes the balance of the Account to exceed the Credit Limit. Checks and drafts approved as a means to obtain Loans under this Agreement are subject to and are governed by the same deposit account rules and agreements (the "Rules") that govern checks and drafts that are drawn on deposit accounts at Lender. I acknowledge receipt of the Rules.

(b) ☐ If checked, whenever the ledger balance in my deposit account identified below is less than $ **n/a** (the "Trigger Amount"), for whatever reason, and regardless of the means of debiting the account, including, without limitation because I have issued checks, used a debit card, made telephone or internet transfers or because of in person withdrawals of preauthorized transfers, I request the Lender to automatically advance funds in increments of $ **n/a** from my Account to my deposit account in an amount sufficient to increase the balance to the Trigger Amount, or such lesser amount as may be available to me under this Agreement. Lender shall not advance funds under this provision if my deposit account is closed.

**6. Payment.** The total unpaid balance or, at my option, at least the Minimum Payment is due and payable ☒ on or before the **22nd** day after the closing date of the billing period ☐ by the end of the next billing period ☐ on **n/a** and on the same day of each month **n/a** thereafter. The billing period under this Agreement will be ☒ monthly ☐ quarterly ☐ **n/a**.

(a) ☐ The Minimum Payment is **n/a** % of ☐ the highest principal balance in the Account since the balance was last reduced to zero ☐ the unpaid principal balance, plus unpaid Finance Charges, ☐ the unpaid balance, including unpaid Finance Charges, ☐ the unpaid principal balance outstanding on the last day of each billing period, rounded to the next highest **n/a** increment, but the Minimum Payment shall not be less than $ **n/a** unless a lesser amount paid will reduce the balance of the Account to zero.

(b) ☒ The Minimum Payment is the total amount of unpaid Finance Charges.

In addition, I must pay any amount by which the balance of the Account exceeds the Credit Limit, any prior unpaid Minimum Payments and any additional charges. The total unpaid balance shall be due and payable in full on the Termination Date. ☐ If checked, I agree to maintain the deposit account identified below and authorize the Lender to automatically debit my Minimum Payment and other charges due under this Agreement.

**7. Security Interest.** This Agreement is secured by real estate mortgage(s) or security agreement(s), (the "Mortgage," whether one or more) to the Lender dated **March 15, 2011** on property located at **3921 County Line Rd., Brown Deer, WI 53209** and as more particularly described in the Mortgage, and on page 2.

This Agreement includes the Additional Provisions, on page 2. I agree to the terms and conditions set forth above and on page 2, and as they may be amended from time to time. I acknowledge receipt of the Early Disclosures of Important Terms and the accompanying brochure when applying for a home equity line of credit and of a completed copy of this Agreement. See important disclosures on page 2.

| n/a | Dated **March 15, 2011** | kwiktag® 064 681 455 | |
|---|---|---|---|
| Deposit Account No. | | | |

X **Chad M Davidson**  2-15-11 (SEAL)    X _____ (SEAL)
CUSTOMER SIGNATURE    CUSTOMER SIGNATURE

**1987 Covey Court**
(Customer Address)

X _____
CUSTOMER SIGNATURE

**West Bend, WI 53090**

X _____
CUSTOMER SIGNATURE

**EXHIBIT**

C

**8. Additional Loan Procedures.** The L... r's obligation to make Loans to me shall be effective at the time th... signs this Agreement and delivers a signed copy to me.

**9. Additional Security Provisions.** The Lender disclaims and will not enforce the Mortgage as security for any Loan or portion thereof, which exceeds the Credit Limit or as security for this Agreement if this Agreement is governed by the Wisconsin Consumer Act and at the time this Agreement is desired due and payable because of the occurrence of an event of default the full unpaid obligation (including unpaid Finance Charges) is less than $1,000. Unless a lien would be prohibited by law or would render a nontaxable account insurable, I grant to the Lender a security interest and lien in any deposit account I may at any time have with the Lender to secure payment of this Agreement. This Agreement is also secured by collateral securing other loans I may have with the Lender to the extent not prohibited by the Wisconsin Consumer Act. The Lender may, at any time after the occurrence of an event of default and notice and opportunity to cure, if required by Section 425.105, Wis. Stats., set-off any amount unpaid under this Agreement against any deposit balances I may at any time have with the Lender or other money now or hereafter owed to me by the Lender.

**10. Additional Payment Provisions.** I will be furnished a statement by the Lender each billing period at the end of which there is an undisputed debit or credit balance of $1.00 or more in my Account of on which a finance charge has been imposed unless the Lender deems this Agreement uncollectible, delinquency proceedings have been instituted, Lender has charged off the Account and will not charge any additional fees or interest or furnishing this statement would violate federal law. The Minimum Payment may not if payment schedule 8(a) is selected and will not if payment schedule 8(b) is selected fully repay the principal that is outstanding under this Agreement. I would then be required to pay the entire balance in a single final payment on the Termination Date. I may prepay the unpaid balance in whole or in part at any time without penalty. All payments will be applied first to payment of Finance Charges and additional charges, if any, in such order as the Lender determines, and then to Loans. A partial prepayment will not postpone the due date of any subsequent Minimum Payment. Payments must be made to the Lender at its address shown above and are not credited until received in the Lender's office during normal business hours.

---

**11. Refusal to Lend.** The Lender may reduce the Credit Limit and/or refuse to honor any Check or request by me for a Loan during such time as (a) I breach a material obligation under this Agreement, (b) the value of the real estate securing this Agreement has declined significantly from its value as initially appraised by or for the Lender, (c) the Lender reasonably believes that I will be unable to fulfill my repayment obligations under this Agreement due to a material change in my financial condition, (d) the Lender is prohibited by government action from imposing the Annual Percentage Rate provided for in this Agreement, (e) the priority of the Lender's Mortgage is adversely affected by government action to the extent that the value of the Mortgage is less than 120% of the Credit Limit, (f) any maximum Annual Percentage Rate described in the Agreement is reached, (g) the Lender has been notified by its regulatory agency that additional loans constitute an unsafe and unsound practice, or (h) upon the occurrence of any of the circumstances described in paragraph 12 (a), (b) or (c). The Lender shall mail or deliver written notice of the action to me within 3 business days after the action is taken at the most recent address appearing on the Lender's records. If more than one person signs this Agreement, the Lender may, at its option and without notice, reduce the Credit Limit and/or refuse to honor any Checks or requests by any of us for a Loan, at any time following Lender's receipt of a request to do so from any one of us or following Lender's receipt of inconsistent instructions from us. Lender may require consistent instructions from all persons signing this Agreement to reverse Lender's action taken in response to a request from any one of us.

**12. Termination.** The Lender may terminate my right to obtain Loans under this Agreement at any time after (a) there has been fraud or a material misrepresentation by me in connection with this Agreement, (b) I fail to make any payment when due, or (c) any action or inaction by me adversely affects the Mortgage or any right of the Lender in the real estate described in the Mortgage, including but not limited to, the transfer of title to or sale of the real estate by me without consent of the Lender, my failure to maintain required insurance on improvements on the real estate, waste or failure to maintain such real estate, failure to pay taxes on such real estate, my death, the filing of a lien senior to the Mortgage, failure of a real estate or improvements described in the Mortgage are taken through eminent domain, or a prior lienholder forecloses on the real estate and improvements subject to the Mortgage. I may terminate my right to obtain Loans under this Agreement at any time and for any reason by written notice to the Lender by any of us, and such notice of termination shall be binding on each of us. Such notice from me is effective when received by the Lender. The notice must be given in time for the Lender to take appropriate action prior to presentment of a Loan request to the Lender. Unless sooner terminated for any of the reasons described above, this Agreement shall mature and terminate on the date specified in paragraph 1. Termination, for whatever reason, does not affect the Lender's rights, powers and privileges, or my duties and liabilities with regard to the then existing balance of the Account.

**13. Acceleration.** I shall not take any action or permit an event to occur which materially impairs the condition, value or protection of or the Lender's rights in any collateral. Upon the occurrence of any one or more of the following events of default: (a) I fail to pay at least the Minimum Payment when due on two occasions within any twelve-month period; or (b) I fail to observe or perform any of the other covenants or duties contained in this Agreement or any agreement securing this Agreement if the failure materially impairs the condition, value or protection of or the Lender's rights in any collateral; then, at the Lender's option, the full amount unpaid under this Agreement shall become immediately due and payable unless notice to me and an opportunity to cure is required by Section 425.105, Wis. Stats., and in that event, shall become due and payable if I do not cure as provided in that statute. The Lender may waive any default without waiving any other prior or subsequent default. To the extent not prohibited by the Wisconsin Consumer Act or Ch. 428, Wis. Stats., if applicable, I shall reimburse the Lender for its costs of collection, including attorneys' fees and legal expenses.

**14. Amendment.** The Lender may amend the terms of this Agreement from time to time make any insignificant change to its terms or to make any change that will unequivocally benefit me throughout the remainder of this Agreement, and will mail to me at my last known address shown on the records of the Lender, written notice of any such amendment not less than 15 days prior to the effective date or as otherwise required by law. This Agreement may not otherwise be amended or modified unless the amendment or modification is in writing and signed by the Lender and me.

**15. Assignment.** This Agreement runs exclusively to me and neither this Agreement nor any of my rights under it are assignable.

**16. Credit Information.** I agree to furnish or will authorize to be furnished such current and financial information (including but not limited to current financial statements) as the Lender may require from time to time. I authorize the Lender to investigate my credit standing prior to the Lender's acceptance of this Agreement and at any time thereafter. I authorize the Lender to disclose information to third parties relating to my credit standing with the Lender to the extent not prohibited by applicable law.

**17. Joint Accounts.** "I," "my" and "me" includes each person other than the Lender who signs this Agreement. Any of us may request Loans under this Agreement and all of us are jointly and severally liable for all Loans and other obligations under this Agreement.

**18. Interpretation.** The validity, construction and enforcement of this Agreement are governed by the internal laws of Wisconsin except to the extent such laws are preempted by federal law. Invalidity of any provision of this Agreement shall not affect the validity of any other provisions of this Agreement to the extent not prohibited by the Wisconsin Consumer Act. Terms not otherwise defined have the meanings assigned to them by the Wisconsin Uniform Commercial Code, the Wisconsin Consumer Act and Federal Reserve System Regulation Z (12 CFR Part 226). This Agreement is intended by the Lender and me as a final expression of this Agreement and as a complete and exclusive statement of its terms, there being no conditions to the full effectiveness of this Agreement except as set forth in this Agreement. The provisions of this Agreement shall control whenever inconsistent with provisions of any agreement securing this Agreement.

**19. Tax Implications.** I should consult a tax adviser regarding the deductibility of interest and charges made under this Agreement.

---

**Variable Rate Disclosures**

**Variable Rate.** If box 4(b) is checked, this Agreement contains a variable interest rate provision which permits the Lender to increase or decrease the rate of interest from time to time. The following disclosures are applicable if this Agreement is secured by a first lien real estate mortgage or equivalent security interest on a one-to-four-family dwelling used as my principal place of residence:

**Index.** An increase or decrease in the Index Rate defined in paragraph 4(b) will cause a corresponding increase or decrease in the Annual Percentage Rate.

**Right to Prepay.** I may prepay this Agreement in whole or in part at any time without penalty.

**Notice.** Unless this Agreement is secured by an equivalent security interest as defined under applicable law determined as of the date of this Agreement, notice of any increase in the Annual Percentage Rate must be given to me by the Lender.

---

**YOUR BILLING RIGHTS**
**KEEP THIS NOTICE FOR FUTURE USE**

This Notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill.** If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
* Your name and account number.
* The dollar amount of the suspected error.
* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before your bill is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

| W. B. A. | 428 (4/09) | 11142 |

Financial Link®
© 2009 Wisconsin Bankers Association / Distributed by FIPCO®

DOCUMENT NO.

## REAL ESTATE MORTGAGE
(Use For Consumer or Business Transactions)

Chad M Davidson, A Single Person

_____
_____
_____

("Mortgagor," whether one or more), whose address is_____
1997 Covey Place, West Bend, WI 53090

mortgages, conveys, assigns, grants a security interest in and warrants to _____
First Bank Financial Centre
155 W. Wisconsin Ave., Oconomowoc, WI 53066
("Lender") in consideration of the sum of _____
Twelve Thousand Three Hundred and 00/100
_____ Dollars

($ 12,300.00 ), loaned or to be loaned to Chad M Davidson

("Borrower," whether one or more) by Lender, evidenced by Borrower's note(s) or agreement(s) dated March 15, 2011

the real estate described below, together with all privileges, hereditaments, easements and appurtenances, all rents, leases, issues and profits, all claims, awards and payments made as a result of the exercise of the right of eminent domain, all existing and future improvements and all goods that are or are to become fixtures (all called the "Property") to secure the Obligations described in paragraph 5, including, but not limited to, repayment of the sum stated above plus certain other debts, obligations and liabilities arising out of past, present and future credit granted by Lender. SINCE THIS MORTGAGE SECURES ALL OBLIGATIONS DESCRIBED IN PARAGRAPH 5, IT IS ACKNOWLEDGED AND AGREED THAT THIS MORTGAGE MAY SECURE OBLIGATIONS FROM TIME TO TIME IN A DOLLAR AMOUNT GREATER THAN THE DOLLAR AMOUNT STATED ABOVE.
☒ If checked here, and not in limitation of paragraph 5, this Mortgage is also given to secure all sums advanced and re-advanced to Borrower by Lender from time to time under the revolving credit agreement between Borrower and Lender described above.

1. **Description of Property.** (This Property is _____ the homestead of Mortgagor.)
THIS IS A PURCHASE MONEY MORTGAGE

kwiktag®   064 661 457

DOC.# 09982204

RECORDED   03/24/2011  11:17AM
JOHN LA FAVE
REGISTER OF DEEDS
Milwaukee County, WI
AMOUNT:    30.00
FEE EXEMPT #:

Recording Area

Name and Return Address
First Bank Financial Centre

155 W. Wisconsin Ave.

Oconomowoc, WI 53066

011-0233

Parcel Identifier No.

☐ If checked here, description continues or appears on attached sheet(s).
☐ If checked here, this Mortgage is a construction mortgage.
☐ If checked here, Condominium Rider is attached.
2. **Title.** Mortgagor warrants title to the Property, excepting only restrictions and easements of record, municipal and zoning ordinances, current taxes and assessments not yet due and A Mortgage to First Bank Financial Centre dated March 15, 2011 in the original amount of $61,500.00

3. **Escrow. Interest** will _____ be paid on escrowed funds if an escrow is required under paragraph 8(e).

4. **Additional Provisions.** This Mortgage includes the additional provisions on pages 2 and 3, which are made a part of this Mortgage

**EXHIBIT**

D

**5. Mortgage as Security.** This Mortgage secures prompt payment to Lender of (a) the sum stated in the first paragraph of this Mortgage, plus interest and charges, according to the terms of the promissory note(s) or agreement(s) of Borrower to Lender identified in the first paragraph of this Mortgage, and any and all extensions, renewals or modifications of such promissory note(s) or agreement(s), plus (b) to the extent not prohibited by the Wisconsin Consumer Act, if applicable, all other debts, obligations and liabilities arising out of credit previously granted, credit contemporaneously granted and credit granted in the future primarily for personal, family or household purposes by Lender to any Mortgagor, to any Mortgagor and another or to another guaranteed or endorsed by any Mortgagor and agreed in documents evidencing the transaction to be secured by this Mortgage, plus all interest and charges, plus (c) all other debts, obligations and liabilities arising out of credit previously granted, credit contemporaneously granted and credit granted in the future other than primarily for personal, family or household purposes by Lender to any Mortgagor, to any Mortgagor and another or to another guaranteed or endorsed by any Mortgagor, plus all interest and charges, plus (d) to the extent not prohibited by the Wisconsin Consumer Act or Chapter 428, Wisconsin Statutes, if applicable, all costs and expenses of collection or enforcement (all called the "Obligations"). This Mortgage also secures the performance of all covenants, conditions and agreements contained in this Mortgage. Unless otherwise required by law, Lender will satisfy this Mortgage upon request by Mortgagor if (a) the Obligations have been paid according to their terms, (b) any commitment to make future advances secured by this Mortgage has terminated, (c) Lender has terminated any line of credit under which advances are to be secured by this Mortgage, and (d) all other payments required under this Mortgage and the Obligations and all other terms, conditions, covenants, and agreements contained in this Mortgage and the documents evidencing the Obligations have been paid and performed.

**6. Taxes.** To the extent not paid to Lender under paragraph 8(a), Mortgagor shall pay before they become delinquent all taxes, assessments and other charges which may be levied or assessed against the Property, against Lender upon this Mortgage or the Obligations or other debt secured by this Mortgage, or upon Lender's interest in the Property, and deliver to Lender receipts showing timely payment.

**7. Insurance.** Mortgagor shall keep the improvements on the Property insured against direct loss or damage occasioned by fire, flood, extended coverage perils and such other hazards as Lender may require, through insurers reasonably satisfactory to Lender, in amounts, without co-insurance, not less than the unpaid balance of the Obligations or the full replacement value, whichever is less, and shall pay the premiums when due. The policies shall contain the standard mortgage and lender loss payee clause in favor of Lender, shall insure Lender notwithstanding any defenses of the insurer against Mortgagor and, unless Lender otherwise agrees in writing, the original of all policies covering the Property shall be deposited with Lender. Subject to Lender's satisfaction, Mortgagor is free to select the insurance agent or insurer through which insurance is obtained. Mortgagor shall promptly give notice of loss to insurance companies and Lender. All proceeds from such insurance shall be applied, at Lender's option, to the installments of the Obligations in the inverse order of their maturities (without penalty for prepayment) or to the restoration of the improvements on the Property. In the event of foreclosure of this Mortgage or other transfer of title to the Property, in extinguishment of the indebtedness secured hereby, all right, title, and interest of Mortgagor in and to any insurance then in force shall pass to the purchaser or grantee. If Mortgagor fails to keep any required insurance on the Property, Lender may purchase such insurance for Mortgagor, such insurance may be acquired by Lender solely to protect the interest of Lender (it will not cover Mortgagor's equity in the Property), and Mortgagor's obligation to repay Lender shall be in accordance with paragraph 10.

**8. Mortgagor's Covenants.** Mortgagor covenants:

(a) **Escrow.** If an escrow is required by Lender, to pay Lender sufficient funds, at such times as Lender designates, to pay when due (1) the estimated annual real estate taxes and assessments on the Property, (2) all property and hazard insurance premiums, (3) flood insurance premiums, if any, (4) if payments owed under the Obligations are guaranteed by mortgage guaranty insurance, the premiums necessary to pay for such insurance, and (5) other items agreed to be included in the escrow. Lender may, at any time, collect and hold such escrow funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Mortgagor's escrow account under the federal Real Estate Settlement Procedures Act of 1974, as amended from time to time, if applicable. Lender may estimate the amount of escrow funds due on the basis of current data and reasonable estimates of future expenditures of future escrow account funds or as otherwise required by applicable law. Lender shall apply the escrowed funds against taxes, assessments and insurance premiums when due or as otherwise required by law. Escrowed funds may be commingled with Lender's general funds. If the escrowed funds held by Lender exceed the amount permitted to be held by applicable law, Lender shall account to Mortgagor for the excess escrowed funds in a manner determined by Lender or as otherwise required by applicable law. If the escrowed funds held by Lender at any time are not sufficient to pay the escrow account items when due, Lender may notify Mortgagor in writing, and Mortgagor shall pay to Lender the amount necessary to make up the deficiency in a manner determined by Lender or as otherwise required by applicable law;

(b) **Condition and Repair.** To keep the Property in good and tenantable condition and repair, and to restore or replace damaged or destroyed improvements and fixtures;

(c) **Liens.** To keep the Property free from liens and encumbrances superior to the lien of this Mortgage and not described in paragraph 2;

(d) **Other Mortgages.** To perform all of Mortgagor's obligations and duties under any other mortgage or security agreement on the Property and any obligation to pay secured by such a mortgage or security agreement;

(e) **Waste.** Not to commit waste or permit waste to be committed upon the Property or abandon the Property;

(f) **Conveyance.** Not to sell, assign, lease, mortgage, convey or otherwise transfer any legal or equitable interest in all or part of the Property, or permit the same to occur without the prior written consent of Lender and, without notice to Mortgagor, Lender may deal with any transferee as to his interest in the same manner as with Mortgagor, without in any way discharging the liability of Mortgagor under the Mortgage or the Obligations;

(g) **Alteration or Removal.** Not to remove, demolish or materially alter any part of the Property, without Lender's prior written consent, except Mortgagor may remove a fixture, provided the fixture is promptly replaced with another fixture of at least equal utility;

(h) **Condemnation.** To pay to Lender all compensation received for the taking of the Property, or any part, by condemnation proceeding (including payments in compromise of condemnation proceedings), and all compensation received as damages for injury to the Property, or any part. The compensation shall be applied in such manner as Lender determines to rebuilding of the Property or to the Obligations in the inverse order of their maturities (without penalty for prepayment);

(i) **Inspection.** Lender and its authorized representatives may enter the Property at reasonable times to inspect it, and at Lender's option to repair or restore the Property and to conduct environmental assessments and audits of the Property;

(j) **Laws.** To comply with all laws, ordinances and regulations affecting the Property;

(k) **Subrogation.** That Lender is subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the proceeds of the note(s) or agreement(s) identified in the first paragraph of this Mortgage; and

(l) **Leases.** To pay and perform all obligations and covenants under and pursuant to the terms of each lease of all or any part of the Property required of Mortgagor, and to not cancel, accept a surrender of, modify, consent to an assignment of the lessee's interest under, or make any other assignment or other disposition of, any lease of all or any part of the Property or any interest of Mortgagor in the lease and to not collect or accept any payment of rent more than one month before it is due and payable.

**9. Environmental Laws.** Mortgagor represents, warrants and covenants to Lender (a) that during the period of Mortgagor's ownership or use of the Property no substance has been, is or will be present, used, stored, deposited, treated, recycled or disposed of on, under, in or about the Property in a form, quantity or manner which if known to be present on, under, in or about the Property would require clean-up, removal or some other remedial action ("Hazardous Substance") under any federal, state or local laws, regulations, codes or rules ("Environmental Laws"); (b) that Mortgagor has no knowledge, after due inquiry, of any prior use or existence of any Hazardous Substance on the Property by any prior owner of or person using the Property; (c) that, without limiting the generality of the foregoing, Mortgagor has no knowledge, after due inquiry, that the Property contains asbestos, polychlorinated biphenyl components (PCBs) or underground storage tanks; (d) that there are no conditions existing currently or likely to exist during the term of this Mortgage which would subject Mortgagor to any damages, penalties, injunctive relief or clean-up costs in any governmental or regulatory action or third-party claims relating to any Hazardous Substance; (e) that Mortgagor is not subject to any court or administrative proceeding, judgment, decree, order or citation relating to any Hazardous Substance; (f) that Mortgagor in the past has been, at the present is, and in the future will remain in compliance with all Environmental Laws. Mortgagor shall indemnify and hold harmless Lender, its directors, officers, employees and agents from all loss, cost (including reasonable attorneys' fees and legal expenses), liability and damage whatsoever directly or indirectly resulting from, arising out of, or based upon (i) the presence, use, storage, deposit, treatment, recycling or disposal, at any time, of any Hazardous Substance on, under, in or about the Property, or the transportation of any Hazardous Substance to or from the Property, (ii) the violation or alleged violation of any Environmental Law, permit, judgment or license relating to the presence, use, storage, deposit, treatment, recycling or disposal of any Hazardous Substance on, under, in or about the Property, or the transportation of any Hazardous Substance to or from the Property, or (iii) the imposition of any governmental lien for the recovery of environmental clean-up costs expended under any Environmental Law. Mortgagor shall immediately notify Lender in writing of any governmental or regulatory action or third-party claim instituted or threatened in connection with any Hazardous Substance on, in, under or about the Property.

**10. Authority of Lender to Perform for Mortgagor.** If Mortgagor fails to perform any of Mortgagor's duties set forth in this Mortgage, including, without limitation, preserving and insuring the Property, not committing waste or abandoning the Property, keeping the Property free of liens or encumbrances other than those approved by Lender, keeping the Property in good and tenantable condition and repair, and complying with all laws, ordinances and regulations affecting the Property, Lender may after giving Mortgagor any notice and opportunity to perform which are required by law, perform the covenants or duties or cause them to be performed, or take such other action as may be necessary to protect Lender's interest in the Property and to secure and repair the Property. Unless prohibited by the Wisconsin Consumer Act, if applicable, such actions may include, without limitation, assessing the value of the Property, paying liens that become superior to this Mortgage and making any other payments required, signing Mortgagor's name, engaging an attorney, appearing in court and paying court costs, attending building code violations and dangerous conditions and maintaining appropriate utilities to the Property. Any such amounts expended by Lender shall be due on demand and secured by this Mortgage, bearing interest at the highest rate stated in any document evidencing an Obligation, but not in excess of the maximum rate permitted by law, from the date of expenditure by Lender to the date of payment by Mortgagor.

**11. Default; Acceleration; Remedies.** If (a) there is a default under any Obligation secured by this Mortgage, or (b) Mortgagor fails timely to observe or perform any of Mortgagor's covenants or duties contained in this Mortgage, then, at the option of Lender, each Obligation will become immediately due and payable unless notice to Mortgagor or Borrower and an opportunity to cure are required by § 425.105, Wis. Stats., if applicable, or the document evidencing the Obligation and, in that event, the Obligation will become due and payable if the default is not cured as provided in that statute or the document evidencing the Obligation or as otherwise provided by law. If Lender exercises its option to accelerate, the unpaid principal and interest owed on the Obligation, together with all costs and fees, shall be immediately due and payable by Lender as authorized or required under this Mortgage or any Obligation, shall be collectible in a suit at law or by foreclosure of this Mortgage by action, or both, or by the exercise of any other remedy available at law or equity.

**12. Waiver and Consent.** Lender may waive any default without waiving any other subsequent or prior default by Mortgagor. Unless prohibited by the Wisconsin Consumer Act, if applicable, each Mortgagor who is not also a Borrower expressly consents to and waives notice of the following without affecting the liability of any such Mortgagor: (a) the creation of any present or future Obligations, default under any Obligations, proceedings to collect from any Borrower or anyone else, (b) any surrender, release, impairment, sale or other disposition of any security or collateral for the

Obligations, (c) any release or agreement not to ... any guarantor or surety of the Obligations, (d) an... ...ilure to perfect Lender's security interest in or realize upon any security or collateral for the Obligations, (e) any failure to realize upon any of the Obligations or to proceed against any Borrower or any guarantor or surety, (f) any renewal or extension of the time of payment, (g) any determination of the allocation and application of payments and credits and acceptance of partial payments, (h) any application of the proceeds of disposition of any collateral for the Obligations to any obligation of any Borrower secured by such collateral in such order and amounts as it elects, (i) any determination of what, if anything, may at any time be done with reference to any security or collateral, and (j) any settlement or compromise of the amount due or owing or claimed to be due or owing from any Borrower, guarantor or surety.

**13. Power of Sale.** In the event of foreclosure, Lender may sell the Property at public sale and execute and deliver to the purchasers deeds of conveyance pursuant to statute.

**14. Assignment of Rents and Leases.** Mortgagor conveys, assigns and transfers to Lender, as additional security for the Obligations, all leases of all or any part of the Property, whether oral or written, now or hereafter entered into by Mortgagor, together with any and all extensions and renewals of any leases, and all rents which become or remain due or are paid under any agreement of lease for the use or occupancy of any part or all of the Property. Until the occurrence of an event of default under this Mortgage or any Obligation, Mortgagor has a license to collect the rents, issues and profits (the "Rents") from the Property. To the extent not prohibited by the Wisconsin Consumer Act, if applicable, upon or at any time after the occurrence of such an event of default and the expiration of any applicable cure period described in paragraph 11, and lapse of any applicable grace, notice or cure period provided in any document evidencing such Obligation, the license granted Mortgagor to collect the Rents shall automatically and immediately terminate and Mortgagor shall hold all Rents (whether paid before or after an event of default) in trust for the use and benefit of Lender, and Lender may, at its option, without any further notice, either in person or by agent, with or without taking possession of or entering the Property, with or without bringing any action or proceeding, or by a receiver to be appointed by a court, collect all the Rents payable under the leases. All such payments shall be applied in such manner as Lender determines to payments required under this Mortgage and the Obligations. To the extent not prohibited by the Wisconsin Consumer Act, if applicable, this assignment shall be enforceable and Lender shall be entitled to take any action to enforce the assignment (including notice to the tenants to pay directly to Lender or the commencement of a foreclosure action) without seeking or obtaining the appointment of a receiver or possession of the Property. Any entering upon and taking possession of the Property, any collection of Rents and any application of Rents as allowed by this Mortgage shall not cure or waive any default or waive, modify or affect notice of default under this Mortgage or invalidate any act done pursuant to such notice, and not in any way operate to prevent Lender from pursuing any other remedy which it now or hereafter may have under the terms or conditions of this Mortgage, any document evidencing any Obligation or any other instrument securing the Obligations.

**15. Receiver.** Upon the commencement or during the pendency of an action to foreclose this Mortgage, or enforce any other remedies of Lender under it, without regard to the adequacy or inadequacy of the Property as security for the Obligations, Mortgagor agrees that the court may appoint a receiver of the Property (including homestead interest) without bond, and may empower the receiver to take possession of the Property and collect the rents, issues and profits of the Property and exercise such other powers as the court may grant until the confirmation of sale, and may order the rents, issues and profits, when so collected, to be held and applied as the court may direct.

**16. Foreclosure Without Deficiency Judgment.** If the Property is a one-to-four family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Mortgagor agrees to the provisions of §846.101 Wis. Stats., and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the Property is other than a one-to-four family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Mortgagor agrees to the provisions of §846.103, Wis. Stats., and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

**17. Expenses.** To the extent not prohibited by the Wisconsin Consumer Act or Chapter 428, Wisconsin Statutes, if applicable, Mortgagor shall pay all reasonable costs and expenses before and after judgment, including without limitation, attorneys' fees, fees and expenses for environmental assessments, inspections and audits, and fees and expenses for obtaining title evidence incurred by Lender in protecting or enforcing its rights under this Mortgage.

**18. Successors and Assigns.** The obligations of all Mortgagors are joint and several. This Mortgage benefits Lender, its successors and assigns, and binds Mortgagor(s) and their respective heirs, personal representatives, successors and assigns.

**19. Interpretation.** The validity, construction and enforcement of this Mortgage are governed by the internal laws of Wisconsin except to the extent such laws are preempted by federal law. All references in this Mortgage to sections of the Wisconsin Statutes are to those sections as they may be renumbered from time to time. Invalidity of any provision of this Mortgage will not affect the validity of any other provision. This Mortgage is intended by Mortgagor and Lender as a final expression of this Mortgage and as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Mortgage. This Mortgage may not be supplemented or modified except in writing.

**20. Other Provisions.** (If none are stated below, there are no other provisions.)

The undersigned agrees to the terms of this Mortgage and acknowledges receipt of an exact copy of this Mortgage.

```
NOTICE TO CUSTOMER IN A TRANSACTION GOVERNED BY THE WISCONSIN CONSUMER ACT
(a)  DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON ALL THREE PAGES, EVEN IF OTHERWISE ADVISED.
(b)  DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
(c)  YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d)  YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE
     ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.
```

Signed and Sealed March 15, 2011

_____ (Date)

_____ (SEAL)

_____
(Type of Organization)

_____
(State of Organization)

_____
(Organizational I.D. Number, if any)

By: _____ (SEAL)

By: _____ (SEAL)

By: _____ (SEAL)

By: _____ (SEAL)

_____ (SEAL)
Chad M Davidson

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

**AUTHENTICATION**

Signatures of _____

_____

authenticated this _____ day of _____

_____

Title: Member State Bar of Wisconsin

authorized under § 706.06, Wis. Stats.

This instrument was drafted by
Cindy Conway for
First Bank Financial Centre

*Type or print name signed above.

**OR — ACKNOWLEDGMENT**

STATE OF Wisconsin

County of Milwaukee } ss.

This Instrument was acknowledged before me on 3-15-11,
by Chad M Davidson

_____
(Name(s) of person(s))

as n/a
_____
(Type of authority, e.g., officer, trustee, etc., if any)

of n/a
_____
(Name of party on behalf of whom instrument was executed, if any)

Brenda C. Simon
Brenda C. Simon
Notary Public, Wisconsin
My Commission Expires 7/28/11

Mortgage
Page 3 of 3

Unit 8, together with an undivided ____h interest in the Common Elements and Limited Common Elements and the exclusive use of the Limited Common Elements appurtenant to said Unit, in River Side Condominium, a condominium declared and existing under and by virtue of the Wisconsin Condominium Ownership Act of the State of Wisconsin and recorded by a Declaration of such condominium in the Office of the Register of Deeds for Milwaukee County, Wisconsin on April 30, 1979, on Reel 1198, Image 1929, as Document No. 6307114, as amended by Agreement for Removal recorded November 13, 1990, on Reel 2511, Image 614, as Document No. 6435415, said condominium being located in the Village of Brown Deer, County of Milwaukee, State of Wisconsin, on the real estate described in said Declaration and incorporated herein by this reference thereto.
The Post Office address of said Unit is 3921 County Line Road #8, Brown Deer, Wisconsin, 53209.

**Parcel #:**  0110233
**Alt. Parcel #:**

VILLAGE OF BROWN DEER
MILWAUKEE COUNTY, WISCONSIN

| **Tax Address:** | **Owner(s):** O = Current Owner, C = Current Co-Owner |
|---|---|
| CHAD M DAVIDSON<br>3921 W COUNTY LINE RD 8<br>BROWN DEER WI 53209 | O - DAVIDSON, CHAD M |

**Districts:**  SC = School,  SP = Special

| Type | Dist # | Description |
|---|---|---|
| SC | 0721 | BROWN DEER SCHOOL DIST |
| SP | 01 | ADDED BY GCS IMPORT |

**Property Address(es):**  * = Primary
* 3921 W COUNTY LINE RD UNIT #8

**Legal Description:**  **Acres:**  0.000
RIVER SIDE CONDOMINIUM NW 1 8 21 UNIT 8

**Parcel History:**

| Date | Doc # | Vol/Page | Type |
|---|---|---|---|
| 12/10/1999 | 7846590 | 4709/667 | |

**Plat:**  * = Primary
* N/A-NOT AVAILABLE

**Tract:**  (S-T-R 40¼ 160¼ GL)  **Block/Condo Bldg:**

---

**Tax Bill #:**  9671

| | | |
|---|---|---|
| Land Value | 10,000 | |
| Improve Value | 45,500 | |
| Total Value | 55,500 | |
| Ratio | 0.9926 | |
| Fair Mrkt Value | 55,900 | |

| Net Mill Rate | 0.030666870 |
|---|---|
| Gross Tax | 1,850.89 |
| School Credit | 148.88 |
| Total | 1,702.01 |
| First Dollar Credit | 102.50 |
| Lottery Credit   1 Claim | 165.57 |
| Net Tax | 1,433.94 |

**Installments**

| | End Date | Total |
|---|---|---|
| 1 | 01/31/2016 | 714.20 |
| 2 | 03/31/2016 | 399.87 |
| 3 | 05/31/2016 | 399.87 |

## ** UNPAID PRIOR YEAR TAXES **

| | Amt Due | Amt Paid | Balance |
|---|---|---|---|
| Net Tax | 1,433.94 | 0.00 | 1,433.94 |
| Special Assmnt | 0.00 | 0.00 | 0.00 |
| Special Chrg | 80.00 | 0.00 | 80.00 |
| Delinquent Chrg | 0.00 | 0.00 | 0.00 |
| Private Forest | 0.00 | 0.00 | 0.00 |
| Woodland Tax | 0.00 | 0.00 | 0.00 |
| Managed Forest | 0.00 | 0.00 | 0.00 |
| Prop. Tax Interest | | 0.00 | 28.68 |
| Spec. Tax Interest | | 0.00 | 1.60 |
| Prop. Tax Penalty | | 0.00 | 14.34 |
| Spec. Tax Penalty | | 0.00 | 0.80 |
| Other Charges | 0.00 | 0.00 | 0.00 |
| TOTAL | 1,513.94 | 0.00 | **1,559.36** |

*Interest Calculated For 03/23/2016*

**Payment History:**  (Posted Payments)

| Date | Receipt # | Type | Amount |
|---|---|---|---|

**Key:**  Payment Type:  A - Adjustment, R - Redemption, T - Tax

EXHIBIT

tabbies®

E

In re:  **Chad M. Davidson**                                  **AFFIDAVIT**

     Debtor.                                                          Case No. 15-3834-gmh

**FIRST BANK FINANCIAL CENTRE,**

                 Creditor,

     vs.

**CHAD M. DAVIDSON,**

                 Debtor,

     and

**MARY B. GROSSMAN,**

                 Trustee.

| | |
|---|---|
| STATE OF WISCONSIN | ) |
| | : ss. |
| WAUKESHA COUNTY | ) |

     Brian W. Arndt, being first duly sworn on oath, deposes and says:

     1.     That he is Retail Collection Manager for the Secured Creditor, First Bank Financial Centre, and executes this affidavit on behalf of and at the specific request of said Secured Creditor.

     2.     That on August 5, 2015, First Bank Financial Centre obtained a judgment of foreclosure against the Debtor in the Circuit Court of Milwaukee County, Wisconsin, all as more particularly set forth on attached Exhibit A.

     3.     That the subject of said foreclosure action was located at 3921 W. County Line Road, #8, Brown Deer, Milwaukee County, Wisconsin.

1

4. That the total amount of said foreclosure judgment as awarded by the Circuit Court of Milwaukee County was $73,600.21, together with interest thereon at the rate of 4.875% per annum from the date of judgment until the date of the confirmation of the foreclosure sale.

5. That the Sheriff of Milwaukee County executed a Notice of Foreclosure Sale indicating that a sheriff's sale of said premises would be held on February 15, 2016, at 10:30 a.m. in the Milwaukee County Safety Building.

6. That on December 31, 2015, this Bankruptcy Petition was filed and these proceedings instituted by the Debtor, thereby preventing the sheriff's foreclosure sale as previously noticed and advertised.

7. That in addition to the foreclosure judgment of, there are the following liens against said premises:

River Side Condominium Association by reason of any unfiled liens for unpaid condominium assessments.

8. That the current fair market valuation of said premises is $55,900.00.

9. That there is no equity in and to said premises which could be attached or used by the Trustee in Bankruptcy for the benefit of unsecured creditors.

10. That the debtor has failed to make any post-petition mortgage payments to First Bank Financial Centre for January, February, March, or April 2016.

11. That this affidavit is executed in support of a Notice of Motion and Motion requesting the Court to lift the automatic stay as provided in these proceedings and permit the Secured Creditor to proceed with the normal and ordinary sheriff's sale as previously ordered by the Circuit Court of Milwaukee County.

2

12.  That there is presently due to the Secured Creditor for principal, interest, attorney fees, costs and disbursements thus far expended the sum of approximately $77,979.27.

Dated this 5th day of April, 2016.

_____
Brian W. Arndt

Subscribed and sworn to before me
this 5th day of April, 2016.

_____
Notary Public, State of Wisconsin
My Commission Expires: 1-20-18.
MELISSA L LANGE     Waukesha



3

STATE OF WISCONSIN        CIRCUIT COURT        MILWAUKEE COUNTY

FIRST BANK FINANCIAL CENTRE, COPY

           Plaintiff,                         **JUDGMENT OF FORECLOSURE**

    vs.                                Case No. 15-CV-3640

**CHAD DAVIDSON and
JANE DOE DAVIDSON,
RIVER SIDE CONDOMINIUM ASSOCIATION,**

                    Defendants.             **Code: 30404**

       Upon the Order for Judgment of Foreclosure on file herein, and upon the motion of

Plaintiff's attorneys, Schloemer Law Firm, S.C., by Atty. James R. Danaher;

       **IT IS HEREBY DETERMINED AND ADJUDGED:**

       1.      All of the material allegations of the Complaint are proven and true.  That the

interest of the Plaintiff in the hereinafter described property is paramount and superior to that of

all Defendants.

       2.      There is due Plaintiff on the Note and Mortgage attached to the Summons and

Complaint as Exhibits A and B as of April 2, 2015 the sum of $59,212.59, principal, interest, and

late fees.

       3.      The Plaintiff is entitled to interest on said sum at the rate of 4.875% per annum

from April 2, 2015, to the date of confirmation of the sheriff's sale of the premises, or until the

date of redemption, whichever occurs first.   The Plaintiff may expend whatever sums it may deem

necessary to protect its interest in the premises and add such sum to the amount of its judgment

and obtain interest thereon at the rate herein provided from the date such sum is actually paid by

the Plaintiff.  In the event a sheriff's foreclosure sale is held, the Plaintiff shall be entitled to

recovery of its costs and disbursements made therein and an additional sum for attorney's fees.

**EXHIBIT**

A

4.    There is due Plaintiff on the Home Equity Credit Agreement and Mortgage attached to the Summons and Complaint as Exhibits C and D as of April 2, 2015 the sum of $12,647.62, principal, interest, and late fees.

5.    The Plaintiff is entitled to interest on said sum at the rate of 5.75% per annum from from April 2, 2015, to the date of confirmation of the sheriff's sale of the premises, or until the date of redemption, whichever occurs first.   The Plaintiff may expend whatever sums it may deem necessary to protect its interest in the premises and add such sum to the amount of its judgment and obtain interest thereon at the rate herein provided from the date such sum is actually paid by the Plaintiff.   In the event a sheriff's foreclosure sale is held, the Plaintiff shall be entitled to recovery of its costs and disbursements made therein and an additional sum for attorney's fees.

6.    There is due and owing from Defendant an amount of $59,212.59 on the Note and Mortgage, $12,647.62 on the Home Equity Agreement and Mortgage, plus disbursements taxed in the sum of $740.00, and the sum of $1,000.00 for attorney fees which the court determines to be reasonable, for a total amount due and owing of $73,600.21.

7.    The premises hereinafter described consists of a single family condominium and does constitute the homestead of the Defendants and cannot be sold in parcels:

UNIT 8 IN RIVER SIDE CONDOMINIUM, BEING A CONDOMINIUM CREATED UNDER THE CONDOMINIUM OWNERSHIP ACT OF THE STATE OF WISCONSIN BY A DECLARATION OF CONDOMINIUM FOR RIVER SIDE CONDOMINIUM, AS RECORDED IN THE REGISTER OF DEEDS OFFICE FOR MILWAUKEE COUNTY, ON APRIL 30, 1979 ON REEL 1198 OF RECORDS, IMAGE 1929 THROUGH 1948, AS DOCUMENT NO. 5307114 AND BY A CONDOMINIUM PLAT THEREFORE, TOGETHER WITH THE PERCENTAGE OF UNDIVIDED INTEREST IN THE COMMON ELEMENTS AND FACILITIES, SHARED COMMON ELEMENTS AND LIMITED COMMON ELEMENTS, ALL AS DESCRIBED AND STATED IN THE SAID DECLARATION OF CONDOMINIUM. EXCEPTING THEREFROM THAT PART OF COMMON AREAS CONVEYED IN QUIT CLAIM DEED AS RECORDED IN SAID REGISTER OFFICE ON NOVEMBER 13, 1990, ON REEL 2511, IMAGE 618, AS DOCUMENT NO. 6435416, AND EXCEPTED FROM THE CONDOMINIUM BY AN AGREEMENT FOR REMOVAL AS RECORDED IN SAID REGISTER'S OFFICE ON NOVEMBER 13, 1990, IN REEL 2511, IMAGE 614, AS DOCUMENT NO. 6435415.

Tax ID No.: 011-0233

8.      Such foreclosure sale shall be made by the Sheriff of this county according to law and in accordance with the provisions of Chapter 846, Wis. Stats.   The Defendants are entitled to a 6 month period of redemption.   In the event such foreclosure sale does not completely pay the sums as adjudged herein be due to the Plaintiff, the Plaintiff shall not be entitled to recourse against the Defendants for a deficiency judgment.

9.      Said premises shall be sold by the Sheriff of this county, subject to current and delinquent real estate taxes and assessments, but free and clear of all claim, right or equity of redemption thereof, of the parties to this action, their heirs, successors and assigns, and all persons claiming under them subsequent to the filing of the pendency of this action, and the Defendants be forever barred and foreclosed of any right, title or interest in and to said premises.

10.     If a sale be made of the premises to anyone other than the Plaintiff, any proceeds over and above the amount of the judgment, interest thereon, additional attorney fees, and any sums as may be expended to protect Plaintiff's interest in such premises, shall be held by the clerk of this court subject to further order of this court.

11.     The sheriff, after sale, shall make a report to the court, and the purchaser shall be let into possession of the premises on production of the sheriff's deed.   All parties to this action, or other persons securing possession after the date of the Lis Pendens, shall promptly deliver possession to said purchaser, and the court or the clerk shall, on application, issue a writ of assistance to deliver such possession.

12.     The Defendants and persons under them are enjoined from committing waste upon the premises from and after entry of this judgment.

13.     The Plaintiff may also apply for any order supplemental to the judgment, for such

other and further relief as is provided by law in such cases, and as may be just and equitable.

Dated: _____ AUG 5 2015 _____, 2015.

BY THE COURT:

_____

CLERK OF CIRCUIT COURT



FILED

AUG 5 2015

JOHN BARRETT
Clerk of Circuit Court

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

In re: **Chad M. Davidson,**

Case No. 15-33834-gmh

        Debtor.

## AFFIDAVIT OF MAILING

STATE OF WISCONSIN      )
                        : ss.
WASHINGTON COUNTY    )

Pamela K. Ward, being first duly sworn on oath, deposes and says that she is a paralegal at Schloemer Law Firm, S.C., attorneys for First Bank Financial Centre, and that on April 6, 2016, she caused to be deposited in the United States mail at West Bend, Wisconsin, true and correct copies of the within letter to bankruptcy clerk, Notice of Motion and Motion for Relief from the Automatic Stay and Abandonment, Affidavit of James R. Danaher, and Affidavit of Mailing, securely enclosed in an envelope, postage prepaid thereon, to the following named at the address stated, to wit:

SEE ATTACHED MAILING MATRIX.

Dated this 6th day of April, 2016.

_____
Pamela K. Ward

Subscribed and sworn to before me
this 6th day of April, 2016.

_____
Notary Public, State of Wisconsin.
My Commission is Permanent.

(p)AMERICOLLECT INC
PO BOX 2080
MANITOWOC WI 54221-2080

Bby/Cbna
50 Northwest Point Road
Elk Grove Village, IL 60007-1032

Best Buy /CBNA
50 Northwest Point Rd.
Elk Grove Village, IL 60007-1032

CAPITAL ONE, N.A.
C/O BECKET AND LEE LLP
PO BOX 3001
MALVERN, PA 19355-0701

(p)CAPITAL ONE
PO BOX 30285
SALT LAKE CITY UT 84130-0285

Capl/Bstby
26525 N Riverwoods Blvd
Mettawa, IL 60045-3440

Capital One Bank (USA), N.A.
PO Box 71083
Charlotte, NC  28272-1083

CashNet USA
200 W Jackson Blvd
14th Fl
Chicago, IL 60606-6929

Cavalry SPV I, LLC
500 Summit Lake Drive, Ste 400
Valhalla, NY 10595-1340

Chase
Po Box 15298
Wilmington, DE 19850-5298

Citi
Po Box 6241
Sioux Falls, SD 57117-6241

Citibank
PO Box 6241
Sioux Falls, SD 57117-6241

City of Milwaukee
200 E Wells St
Milwaukee, WI 53202-3515

City of Milwaukee
841 N. Broadway
Room 105
Milwaukee, WI 53202-3613

DEPT OF ED/MOHELA
633 SPIRIT DR
CHESTERFIELD MO 63005-1243

Discover Bank
Discover Products Inc
PO Box 3025
New Albany, OH  43054-3025

Discover Fin Svcs Llc
Po Box 15316
Wilmington, DE 19850-5316

(p)DISCOVER FINANCIAL SERVICES LLC
PO BOX 3025
NEW ALBANY OH 43054-3025

First Premier Bank
601 S Minnesota Ave
Sioux Falls, SD 57104-4868

Gecrb/Amazon
Po Box 965015
Orlando, FL 32896-5015

Gecrb/Best Buy
Po Box 981439
El Paso, TX 79998-1439

Gecrb/Jcp
Po Box 984100
El Paso, TX 79998

Hsbc/Bostn
Po Box 15521
Wilmington, DE 19850-5521

Kohl's
N56 W. 17000 Ridgewood Dr
Menomonee Falls, WI 53051-7096

Kohls/Capone
N56 W 17000 Ridgewood Dr
Menomonee Falls, WI 53051-7096

Midwest Commercial Funding
1521 Waukesha Rd.
Caledonia, WI 53108-9710

Mohela
633 Spirit Dr
Chesterfield, MT 63005-1243

Mohela / Department of Education
633 Spirit Dr
Chesterfield, MT 63005-1243

Mohela/Dept Of Ed
633 Spirit Dr
Chesterfield, MO 63005-1243

NAVY FEDERAL CREDIT UNION
P. O. BOX 3000
MERRIFIELD, VA 22119-3000

Navy Federal Cr Union
Po Box 3700
Merrifield, VA 22119-3700

Navy Federal Credit Union
PO Box 3700
Merrifield
22119, VA 22119

(p)MARLIN MEDCLR INOVISION
507 PRUDENTIAL ROAD
HORSHAM PA 19044-2308

Office of the U. S. Trustee
517 East Wisconsin Ave.
Room 430
Milwaukee, WI 53202-4510

Prime Financial Cu
5656 S Packard Ave
Cudahy, WI 53110-2658

Sears/Cbna
Po Box 6189
Sioux Falls, SD 57117-6189

Sunset Dental Care
W247 S3114 Prairie Avenue
Waukesha, WI 53189-7321

Td Bank Usa/Targetcred
Po Box 673
Minneapolis, MN 55440-0673

Time Warner Cable
Milwaukee
Milwaukee, WI 53202

Us Dept Of Education
Po Box 5609
Greenville, TX 75403-5609

Village of Brown Deer
4800 W. Green Brook Drive
Brown Deer, WI 53223-2496

We Energies
Attn Bankruptcy Dept. RM A130
333 W Everett St
Milwaukee WI 53290-0002

WeEnergies
3240 W. Juneau
Milwaukee, WI 53208-2938

WeEnergies
Milwaukee
Milwaukee, WI 53211

Wffnatlbnk
Po Box 94498
Las Vegas, NV 89193-4498

Wi Electric
333 W Everett Pob 2046
Milwaukee, WI 53201-2046

eCAST Settlement Corporation
PO Box 29262
New York, NY 10087-9262

Chad M. Davidson
3921 W County Line Rd #8
Brown Deer, WI 53209-1031

Edward W. Harness
Harness Law Offices
PO Box 1276
Milwaukee, WI 53201-1276

Mary B. Grossman
Chapter 13 Trustee
P.O. Box 510920
Milwaukee, WI 53203-0161



**SCHLOEMER LAW FIRM**

April 6, 2016

CLERK, UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN
517 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202

RE:    Chad M. Davidson Bankruptcy
         Bankruptcy Case No. 15-33834-gmh
         Our File 11801.128

Dear Clerk:

Enclosed please find First Bank Financial Centre's Notice of Motion and Motion for Relief from the Automatic Stay and Abandonment, Affidavit of James R. Danaher, and Affidavit of Mailing in the above matter. I have mailed copies of these documents to all parties involved in this action. If there is no objection within the time period specified in the Notice of Motion and Motion, I will file an Order and Affidavit at the appropriate time.

Thank you for your attention to this matter.

Sincerely,

James R. Danaher

JRD/pw

Enclosures

cc:    Brian Arndt (w/Enclosures)
       Atty. Edward Harness (w/Enclosures)
       Atty. Mary B. Grossman, Trustee (w/Enclosures)
       All other parties listed on Affidavit of Mailing Attached (w/Enclosures)